# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | CRIMINAL ACTION |
| Plaintiff, ) | No. 06-20021-01-KHV |
| ) | |
| v. ) | |
| ) | CIVIL ACTION |
| HECTOR MOREIRA, ) | No. 10-2004-KHV |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant's Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Doc. #626) filed January 4, 2010. For reasons stated below, the Court overrules defendant's motion.[1]

## Factual Background

In 2005, as part of a Drug Enforcement Administration ("DEA") investigation into methamphetamine trafficking in Kansas City, Kansas, several confidential sources stated that they had purchased methamphetamine from Hector Moreira. On December 19, 2005 and January 10, 2006, confidential informants made controlled purchases of methamphetamine from Moreira or his associates. Shortly before another controlled purchase on January 13, 2006, Moreira alerted to the presence of law enforcement and fled in a vehicle which he wrecked a short distance away. Officers found the wrecked vehicle but could not locate Moreira. Officers later learned that Moreira knew someone who lived close to where he had wrecked the car, and that he was staying at that residence.

---

[1] On April 23, 2010, the government filed a response to defendant's motion. On May 19, 2010, defendant filed a reply and a statement of facts. See Movant's Traverse (Doc. #654); Movant's Statement Of Undisputed Issues Of Material Fact (Doc. #655).

On February 1, 2006, a grand jury returned a sealed indictment which charged Moreira and nine others. The Court issued arrest warrants for Moreira and the other defendants. On April 18, 2006, as part of an attempt to make a controlled purchase, a confidential informant called Moreira. Moreira instructed the informant to go to an auto parts store at 18th Street and Central Avenue in Kansas City, Kansas. The informant made a controlled purchase from defendant's counsin Bayron Moreira at that location. After the purchase, officers followed Bayron Moreira, who returned to the home of a co-conspirator, Alberto Perez-Jacome, at 1814 Bunker Avenue, some six blocks north of the auto parts store.[2]

On April 29, 2006, DEA agents arrested Bayron Moreira at his home in Belton, Missouri. That same day, agents also arrested Moreira and Perez-Jacome at the Bunker Avenue house. DEA agents had already arrested the other members of the conspiracy. When agents entered the Bunker Avenue residence, they saw Moreira standing at the stove with a pot of methamphetamine and baggies nearby, and approximately one half kilogram of cocaine on the kitchen table. During the search of the Bunker Avenue house, agents found large amounts of drugs and drug paraphernalia. In a drop ceiling, agents also found four handguns, an AK-47 assault rifle, an SKS Norinco assault rifle, various magazines, a large amount of ammunition and more than $7,000.

On May 26, 2006, a grand jury returned a 21-count indictment which charged Moreira and 12 co-defendants. In particular, the indictment charged defendant with (1) conspiracy to possess with intent to distribute 50 grams or more of methamphetamine, 500 grams or more of cocaine, 50 grams or more of methamphetamine, and a detectable amount of marijuana, in violation of 21 U.S.C.

---

[2] A grand jury later returned a superseding indictment which charged Bayron Moreira and Perez-Jacome. See Second Superseding Indictment (Doc. #170) filed May 26, 2006.

§§ 841(a)(1), (b)(1)(A)(viii), (b)(1)(B)(ii), (b)(1)(D), 846, and 18 U.S.C. § 2; and (2) distribution of five grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii), and 18 U.S.C. § 2. Trial was set for March 20, 2007. On March 19, 2007, three co-defendants (Kenet Del Cid-Rendon, Terri Burford and Justin Bollig) pled guilty. On the day of trial, defendant and his remaining three co-defendants (Bayron Moreira, Edguar Lizardo-Figueroa and Alberto Perez-Jacome) pled guilty without plea agreements.³ Even so, as to defendant, the government agreed to recommend a sentence at the low end of the applicable sentencing guideline range.

The Presentence Investigation Report ("PSIR") noted that Moreira was involved in concerted drug activities with other individuals including Del Cid-Rendon, Lizardo-Figueroa, Bayron Moreira and Perez-Jacome. See PSIR ¶ 82. In particular, the PSIR noted numerous witness statements which suggest that Moreira was the leader of the drug operation in the Kansas City area.

Defendant's base offense level was 38. Under U.S.S.G. § 2D1.1(b)(1), based on the weapons found at the 16th Street and Bunker Avenue houses, the PSIR gave defendant two levels for possession of a firearm. The PSIR noted that his co-conspirators possessed the weapons but that it was not "clearly improbable that the firearms were connected to drug trafficking activities for which Moreira is accountable." Id. ¶ 92. Defendant received a four level enhancement as an organizer or leader of criminal activity that involved five or more participants. U.S.S.G. § 3B1.1A; PSIR ¶ 94. Defendant received a two level downward adjustment for acceptance of responsibility. Based on a total offense level of 44 (adjusted downward to the maximum of 43) and a criminal history category of I, the recommended guideline sentence was life in prison.

---

³ The Court later allowed Perez-Jacome to withdraw his plea, but a jury ultimately convicted him and the Tenth Circuit affirmed his conviction. See United States v. Perez-Jacome, 356 Fed. Appx. 212 (10th Cir. 2009).

-3-

At sentencing, defendant objected to the PSIR because (1) it included the enhancement for possession of a firearm, (2) it did not include a downward adjustment for a minor or minimal role in the offense, (3) it stated that he was not eligible for a a two level downward adjustment under the "safety valve" provision of U.S.S.G. § 5C1.2 and (4) it overstated the amount of drugs attributable to him. Defendant also objected to the government's failure to request a third level for acceptance of responsibility. After hearing testimony from Deputy Jesse Valdez, the Court accepted the findings of the PSIR and overruled all of defendant's objections. It then sentenced defendant to life in prison. Bruce Simon represented defendant throughout this proceeding.

Defendant appealed his sentence. The Tenth Circuit affirmed and the United States Supreme Court denied certiorari. See United States v. Hector Moreira, 317 Fed. Appx. 745 (10th Cir. 2008), cert. denied, 129 S. Ct. 1600 (2009).

On January 4, 2010, defendant filed a pro se motion to vacate his sentence under 28 U.S.C. § 2255. Liberally construed, defendant's motion alleges that Simon was ineffective because (1) he did not file a motion to dismiss based on a violation of defendant's right to a speedy trial; (2) he did not advise defendant that his total offense level would be level 43 and the Court would likely impose a life sentence; (3) he did not file pretrial motions including a motion to suppress and a motion to dismiss; (4) he did not adequately investigate sentencing issues or present evidence at sentencing, (5) he did not investigate the strongest issues for appeal and preserve issues for collateral review, and (6) he had an actual conflict of interest.[4]

---

[4] Defendant also argues that his conviction and sentence violate "his right to freedom of speech and to keep and bear arms and to petition, his right to be free of unreasonable search and seizure, his right to due process of law, his rights to counsel, to jury trial, to confrontation of witnesses, to present a defense and to compulsory process, and his right to be free of cruel and
(continued...)

**Analysis**

The standard of review of Section 2255 petitions is quite stringent. The Court presumes that the proceedings which led to defendant's conviction were correct. See Klein v. United States, 880 F.2d 250, 253 (10th Cir. 1989). To prevail, defendant must show a defect in the proceedings which resulted in a "complete miscarriage of justice." Davis v. United States, 417 U.S. 333, 346 (1974).

To establish ineffective assistance of counsel, defendant must show that (1) the performance of counsel was deficient and (2) the deficient performance was so prejudicial that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687, 694 (1984). To meet the first element, i.e. counsel's deficient performance, defendant must establish that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. In other words, defendant must prove that counsel's performance was "below an objective standard of reasonableness." United States v. Walling, 982 F.2d 447, 449 (10th Cir. 1992). The Supreme Court recognizes, however, "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at

---

[4](...continued)
unusual punishment under the Constitution." Motion (Doc. #626) at 8. Such claims are barred because defendant failed to raise them on direct appeal. Section 2255 is not available to test the legality of matters which should have been raised on appeal. United States v. Allen, 16 F.3d 377, 378 (10th Cir. 1994); United States v. Walling, 982 F.2d 447, 448 (10th Cir. 1992). Defendant is precluded from raising in a Section 2255 petition issues which were not raised on direct appeal unless he can show cause for his procedural default and actual prejudice resulting from the alleged errors, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed. Allen, 16 F.3d at 378. Defendant has not satisfied any of these exceptions. In any event, defendant offers no factual or legal basis for his conclusory assertion. United States v. Kilpatrick, 124 F.3d 218, 1997 WL 537866, at *3 (10th Cir. Sept. 2, 1997) (conclusory allegations do not warrant hearing).

689; see United States v. Rantz, 862 F.2d 808, 810 (10th Cir. 1988) (citation omitted), cert. denied, 489 U.S. 1089 (1989). As to the second element, the Court must focus on the question "whether counsel's deficient performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair." Lockhart v. Fretwell, 506 U.S. 364, 372 (1993).

## I.  Failure To File Motion To Dismiss – Claim 1

Defendant argues that counsel was ineffective because he did not file a motion to dismiss based on a violation of defendant's right to a speedy trial under the Speedy Trial Act and the Sixth Amendment. In defendant's case, from his arrest through the day of his plea, the only periods that were not excludable under the Speedy Trial Act were January 23 through February 20, 2007 and February 27 through March 20, 2007. All other periods of time were excludable under 18 U.S.C. § 3161.[5] In his motion, defendant has not identified any specific time period which the Court erroneously excluded from the speedy trial calculation. Because only 51 days expired under the Speedy Trial Act, counsel's failure to file a motion to dismiss based on a violation of defendant's rights under the Speedy Trial Act was not deficient or prejudicial.

Likewise, counsel's failure to raise an objection under the Sixth Amendment was not ineffective. The federal system maintains "a preference . . . for joint trials of defendants who are

---

[5] The Speedy Trial Act excludes a "reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." 18 U.S.C. § 3161(h)(6). In addition, the Speedy Trial Act excludes any "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion" and any "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court." 18 U.S.C. § 3161(h)(1)(D), (h)(1)(H). The government has correctly set forth the excludable days in its response brief and the Court incorporates that analysis by reference. See Government's Response To Defendant's Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside Or Correct Sentence (Doc. #646) at 14-15.

indicted together." Zafiro v. United States, 506 U.S. 534, 537 (1993). Joint trials promote judicial economy and "serve the interest of justice by avoiding the scandal and inequity of inconsistent trials." Richardson v. Marsh, 481 U.S. 200, 209 (1987). Rules 8(b) and 14 are designed "to promote economy and efficiency and to avoid a multiplicity of trials, [so long as] these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial." Bruton v. United States, 391 U.S. 123, 131, n.6 (1968). In determining whether the delay is "reasonable," the Court examines all relevant circumstances including the following factors: (1) whether defendant is free on bond, (2) whether defendant zealously pursued a speedy trial, and (3) whether the circumstances further the purpose behind the exclusion to accommodate the efficient use of prosecutorial and judicial resources in trying multiple defendants in a single trial. United States v. Vogl, 374 F.3d 976, 983-84 (10th Cir. 2004); United States v. Olivo, 69 F.3d at 1057, 1061-62 (10th Cir. 1995), cert. denied, 519 U.S. 906 (1996); United States v. Tranakos, 911 F.2d 1422, 1426 (10th Cir. 1990). As to the third factor, where the government will recite a single factual history, put on a single array of evidence, and call a single group of witnesses, a single trial is preferred. Tranakos, 911 F.2d at 1426. In light of these standards, defendant has not shown that counsel's failure to raise a Sixth Amendment objection was deficient or prejudicial.

**II.     Failure To Advise Defendant Of Life Sentence – Claim 2**

Defendant argues that counsel was ineffective because he did not advise defendant that his total offense level would be level 43 and that the Court would likely impose a life sentence. At the plea hearing, defense counsel stated that he had told defendant that the range of punishment was ten years to life in prison but that defendant would likely be somewhere in the 30-year range. See Change of Plea Hearing Transcript at 21-22. The Assistant United States Attorney also stated that

she believed defendant would be around the 30-year range and that she would recommend the low end of the applicable guideline range. See id. at 25. Defense counsel agreed that 30 years was the "best case." Id. Defendant admitted at the change of plea hearing that no one made any promise or guarantee about his sentence. He also acknowledged that any prediction by counsel could very well be wrong and that he could be subject to a sentence of life in prison. See id. at 31-33. Defendant acknowledged that his plea was free and voluntary and that no one had forced or threatened him to enter it.[6] See id. at 39. Absent a believable reason justifying departure from their

---

[6] Defendant argues that his plea was not knowing or voluntary because of counsel's erroneous sentencing prediction. An erroneous sentence estimate by counsel, however, does not render a plea involuntary. See United States v. Bridges, 68 Fed. Appx. 896, 900 (10th Cir. 2003) (plea voluntary; prediction of no more than 60 months, sentence of 175 months); Wellnitz v. Page, 420 F.2d 935, 936 (10th Cir. 1970) (plea voluntary; prediction of 25 years, sentence of 100 years); see also Fields v. Gibson, 277 F.3d 1203, 1213-14 (10th Cir. 2002) (plea voluntary when attorney advised defendant that plea would lessen chance of death penalty and court nevertheless imposed death penalty); Braun v. Ward, 190 F.3d 1181, 1189 (10th Cir. 1999) (plea voluntary because defendant took chances by relying on attorney's good-faith advice and no evidence of guarantees or promises), cert. denied, 529 U.S. 1114 (2000); Stout v. United States, 508 F.2d 951, 953 (6th Cir. 1975) (plea not involuntary merely because prediction that guilty plea would result in light sentence did not come true).

The Supreme Court has noted that "[w]aiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts. That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing." McMann v. Richardson, 397 U.S. 759, 770 (1970); see also United States v. Broce, 488 U.S. 563, 572 (1989) (possibility that plea might have been influenced by erroneous assessment of sentencing consequences did not render plea invalid); Brady v. United States, 397 U.S. 742, 757 (1970) (absent misrepresentation or other impermissible conduct by state agents, voluntary plea of guilty intelligently made in light of then applicable law does not become vulnerable because later judicial decisions indicate that plea rested on faulty premise). Defendant acknowledged in his plea petition and at the plea colloquy that he was subject to a maximum sentence of life in prison. At the plea colloquy, defendant stated that he understood that counsel did not know what was going to turn up in the presentence investigation, that counsel could not tell him for certain what his exact sentence would be, that counsel might be wrong and that if his predictions and assumptions were wrong, it could have a "huge effect" on his sentence. Transcript Of Change Plea at 33. The belated timing of defendant's request to withdraw his plea, more than

(continued...)

apparent truth, the accuracy and truth of an accused's statements at a Rule 11 proceeding at which his plea is accepted are conclusively established. United States v. Glass, 66 Fed. Appx. 808, 810 (10th Cir. June 3, 2003); United States v. Jones, 124 F.3d 218, 1997 WL 580493, at *1 (10th Cir. Sept.19, 1997); United States v. Bambulas, 571 F.2d 525, 526 (10th Cir. 1978).

At the time of his plea, defendant apparently assumed that he would most likely receive a sentence of 360 months in prison. Even so, counsel's performance was not deficient. As explained above, defendant fully understood that he was subject to a maximum sentence of life in prison, that counsel's predictions and assumptions could be wrong and that any such errors could have a "huge effect" on his sentence. Transcript Of Change Plea at 33-34. A large part of the Court's standard plea colloquy assumes that counsel will sometimes fail to correctly predict a defendant's sentence. Defendants sometimes receive less time than counsel predict, sometimes more.[7] An attorney miscalculation or erroneous sentence estimate by itself does not establish constitutionally deficient

---

[6](...continued)
two years after he received a copy of the presentence report, also suggests that his plea was knowing and voluntary. In particular, defendant did not assert at sentencing that his plea was involuntary and he did not express any desire to withdraw his plea because of counsel's erroneous prediction.

[7]  Defendant does not allege that counsel promised or guaranteed that if he pled guilty, he would receive less than a life sentence. Cf. Wellnitz, 420 F.2d at 936 (if attorney recklessly promises client that specific sentence will follow guilty plea, such representation may be deemed constitutionally ineffective); see also United States v. Gonzalez, 209 Fed. Appx. 842, 846 (10th Cir. 2006) (erroneous estimate of nine to 15 years in prison does not invalidate plea despite life sentence); Cunningham v. Diesslin, 92 F.3d 1054, 1061 (10th Cir. 1996) (defendant's subjective understanding not based upon promise made by defense attorney, prosecutor or court will not undermine constitutionality of plea); Thomas v. Kerby, 44 F.3d 884, 886 (10th Cir. 1995) (counsel may have estimated and petitioner may have expected sentence substantially less than 20 years imposed but such circumstances do not invalidate plea or render it involuntary). Indeed, at the change of plea hearing, counsel repeatedly informed the Court that based on the number of variables which could affect the sentence, he told defendant that the range of punishment was ten years to life. See Change Of Plea Transcript at 21. Later, after further inquiry by the Court, defense counsel stated that his best calculation was in the range of 30 years. See id. at 21-22.

performance. United States v. Gordon, 4 F.3d 1567, 1570 (10th Cir. 1993); see United States v. Melcher, No. 10-504, 2010 WL 1971913, at *2 (10th Cir. May 18, 2010) (performance not deficient; prediction of 200 months, sentence of life in prison); United States v. Harrison, No. 09-7113, 2010 WL 1225617, at *4 (10th Cir. Mar. 31, 2010) (same; prediction of 37 months, sentence of 70 months); see also United States v. Herrera, 289 Fed. Appx. 302, 304-05 (10th Cir. 2008) (erroneous estimate not deficient where defendant recognized that he faced potential life sentence and plea agreement stated that final sentence was solely in court's discretion). Defense counsel's miscalculation, though significant in terms of the length of the prison term, amounted to a difference of only one offense level on the sentencing guidelines chart (level 43 instead of level 42).

Defendant also cannot establish prejudice. Defendant has not shown a reasonable probability that but for counsel's prediction, the results of the plea proceeding would have been different, i.e. that he would not have agreed to plead guilty. See United States v. Young, 206 Fed. Appx. 779, 785 (10th Cir. 2006); Rantz, 862 F.2d at 810-11. At the plea hearing, the Court fully explained that the statutory maximum for his offense was life in prison and that counsel's estimate of 30 years could turn out to be incorrect and that any error by counsel might have a huge effect on his sentence. See Transcript Of Change Of Plea Hearing at 8, 31-33. After being informed about the statutory maximum and the fact that counsel's prediction could be wrong, defendant pled guilty. See United States v. Kutilek, 260 Fed. Appx. 139, 147 (10th Cir. 2008) (no prejudice from attorney miscalculation in light of judge's statements at plea hearing); United States v. Hamilton, 510 F.3d 1209, 1216 (10th Cir. 2007) (same), cert. denied, 552 U.S. 1331 (2008); United States v. Shedrick, 493 F.3d 292, 299-300 (3d Cir. 2007) (same); Gordon, 4 F.3d at 1571 (same); Doganiere v. United States, 914 F.2d 165, 168 (9th Cir. 1990) (same), cert. denied, 499 U.S. 940 (1991); United States

v. Cruce, No. 97-3167-DES, 1997 WL 557382, at *2 (D. Kan. Aug. 14, 1997) (same; prediction of 36-47 months, sentence of 168 months); United States v. Marsh, 733 F. Supp. 90, 93 (D. Kan. 1990) (same; prediction of three years, sentence of nine years). Accordingly, defendant was not prejudiced by counsel's inaccurate prediction of his sentence.[8]

### III. Failure To File Motion To Suppress And Motion To Dismiss – Claim 3

Defendant argues that counsel provided ineffective assistance because he did not file a motion to suppress or a motion to dismiss the indictment. See Motion (Doc. #626) ¶ 53. Only those motions having a solid foundation, not every possible motion, should be filed. United States v. Afflerbach, 754 F.2d 866, 870 (10th Cir.), cert. denied, 472 U.S. 1029 (1985). Defendant has not shown an adequate factual or legal basis for a motion to suppress or suggested how such a motion would have likely affected the outcome of the case.[9] The Court therefore overrules defendant's claim that counsel was ineffective for failing to file a motion to suppress.

As to defendant's claim that counsel failed to file a motion to dismiss the indictment, he has not shown an adequate factual or legal basis for such a motion. As explained above, counsel's

---

[8] In a related argument, defendant argues that counsel incorrectly told him that he would receive a lesser sentence if he plead guilty rather than proceeded to trial. As explained above, at the time of the plea, counsel only knew of the sentencing range of ten years to life in prison. The plea petition and plea colloquy adequately informed defendant that he faced a mandatory minimum sentence of ten years in prison and a maximum of life and that his plea of guilty did not guarantee a sentence of less than life in prison.

To the extent that defendant did not receive less than life in prison because he did not truthfully disclose information to government agents, counsel could not anticipate that defendant would give a worthless debriefing. See Herrera, 289 Fed. Appx. at 304-05 (counsel not ineffective where defendant failed to advise counsel of facts necessary to arrive at accurate guideline calculation).

[9] The Court overruled motions to suppress filed by co-defendants Galvan, Lizardo-Figueroa and Perez-Jacome.

failure to file a motion based on violation of the Speedy Trial Act and the Sixth Amendment was not deficient or prejudicial.[10]

**IV.  Inadequate Preparation For And Ineffective Performance At Sentencing – Claim 4**

Defendant argues that counsel was ineffective because he did not adequately investigate sentencing issues or present evidence at sentencing. See Motion (Doc. #626) ¶ 54. Defendant has not identified evidence that counsel should have presented at sentencing, how such evidence would have resulted in a different sentence or how he could have more effectively presented evidence at sentencing.[11] The Court therefore overrules defendant's claim that counsel was ineffective at

---

[10]  Defendant also argues that counsel provided ineffective assistance because he did not investigate and advise defendant of all facts and laws relevant to his decision to plead guilty. See Motion (Doc. #626) ¶ 52. Defendant has not explained how counsel's performance was deficient or prejudicial. As explained above, counsel is not ineffective simply because he did not perfectly estimate defendant's actual sentence.

In a related argument, defendant states that counsel was ineffective because he advised defendant to stand trial without conducting an independent investigation of facts and law. Motion (Doc. #626) ¶ 34. Defendant does not explain how such advice was prejudicial in light of the fact that he ultimately pled guilty.

[11]  Defendant argues that counsel was ineffective because he did not file a motion for downward departure or a variance under Section 3553(a). See Motion (Doc. #626) ¶ 55. Defendant offers no factual basis for a downward departure or variance in this case. At sentencing, Simon vigorously argued that defendant was entitled to a third level reduction for acceptance of responsibility. The Court rejected defendant's argument, but counsel's performance in raising this argument was within the wide range of reasonable professional assistance. See Strickland, 466 U.S. at 689. Even if counsel was somehow deficient in how he raised the argument or in not raising additional grounds for a reduced sentence, defendant has not shown that if counsel had raised the objection in a different manner or had raised additional objections, the result of the sentencing proceeding would have been different. The record is barren of a possible basis for departure. At sentencing, the Assistant U.S. Attorney, who had been a federal prosecutor for some five years, noted that when the government allowed defendant to debrief after his plea, it was "the most worthless debriefing of anybody . . . since I've been here," it was a "big waste of time" and he gave "no useful information." Doc. #513 at 60. In light of these comments and the Court's assessment at sentencing that defendant was involved with an "extreme amount of drugs, especially methamphetamine" and multiple weapons, id. at 65, defendant has not shown that counsel's failure

(continued...)

-12-

sentencing.

## V.     Ineffective Assistance On Appeal – Claim 5

Defendant argues that counsel was ineffective on appeal because he failed to investigate the strongest issues for appeal and preserve issues for collateral review. See Motion (Doc. #626) ¶ 56. Defendant does not state specifically how counsel was deficient in this regard. Defendant has not identified any additional issues for appeal or how presenting such issues would have changed the result of the appeal. Defendant's conclusory allegations of ineffective assistance related to additional issues on appeal are insufficient to warrant an evidentiary hearing. See Mayes v. Gibson, 210 F.3d 1284, 1287 (10th Cir.), cert. denied, 531 U.S. 1020 (2000); Hatch v. Oklahoma, 58 F.3d 1447, 1457, 1471 (10th Cir. 1995); United States v. Chandler, 291 F. Supp.2d 1204, 1209 (D. Kan. 2003).

Defendant argues that the Tenth Circuit overruled two of his arguments on appeal because counsel did not adequately preserve the issues for review. First, the Tenth Circuit overruled defendant's objection to the role in the offense adjustment because counsel did not mention this claim in the argument section of the brief. See Moreira, 317 Fed. Appx. at 748. Even if the Court assumes that counsel's performance was deficient in this regard, defendant has not shown a reasonable probability that the result of the appeal would have been different if counsel had raised the issue in the argument section of the appellate brief. See Strickland, 466 U.S. at 687. Section 3B1.1(a) provides for a four-level increase of a defendant's offense level if the district court finds that a defendant (1) was an organizer or leader (2) of a criminal activity that involved five or

---

[11](...continued)
to file a request for a downward departure was prejudicial.

more participants or was otherwise extensive. U.S.S.G. § 3B1.1(a); United States v. Egbert, 562 F.3d 1092, 1103 (10th Cir. 2009). Defendant was one of five people who pleaded guilty to the drug conspiracy count in this case and he certainly was the organizer and leader of the conspiracy. See PSIR ¶¶ 153-55; United States v. Robertson, 45 F.3d 1423, 1448 (10th Cir. 1995) (in determining whether five or more participants involved, defendant is included). Defendant has not shown that counsel's failure to adequately raise the role in the offense objection on appeal was prejudicial.

Second, the Tenth Circuit overruled defendant's claim that the district court did not properly consider the sentencing factors set forth in 18 U.S.C. § 3553(a) because counsel did not support this assertion with substantive argument or citation to the record. See Moreira, 317 Fed. Appx. at 750. Again, even if the Court assumes that counsel's presentation of the argument on appeal was deficient, defendant has not shown a reasonable probability that the result of the appeal would have been different if counsel had properly raised the issue. Absent the need to address specific Section 3553(a) arguments brought to the Court's attention, a one-sentence explanation accompanying a within-guidelines sentence satisfies the district court's duty to impose a procedurally reasonable sentence. United States v. Tindall, 519 F.3d 1057, 1065 (10th Cir. 2008). Moreover, a sentence that is properly calculated under the Guidelines is entitled to a rebuttable presumption of reasonableness. Id. Defendant has not shown a reasonable probability that the result of his appeal would have been different if counsel had more thoroughly addressed the Court's application of the sentencing factors under 18 U.S.C. § 3553(a).[12] Therefore the Court overrules

---

[12] At sentencing, the Court stated as follows:

[The sentencing range under the Guidelines is] an extremely important instrument for the Court to use in determining what sentence is appropriate because they

(continued...)

defendant's claim that counsel was ineffective on appeal in failing to more throughly challenge the Court's application of the Section 3553(a) factors.

**VI.     Conflict Of Interest – Claim 6**

Defendant argues that counsel was ineffective because he had an actual conflict of interest. See Motion (Doc. #626) ¶ 57. Defendant states that "[c]ounsel owed a 'duty' other than to Mr. Moreira. This duty was in conflict with the duty owed to Mr. Moreira. Counsel chose between the duties. This choice adversely affected the performance of counsel during the pretrial, plea, sentencing, and direct appeal process." Id. Because defendant did not raise this issue at sentencing or on direct appeal, he must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. See Cuyler v. Sullivan, 446 U.S. 335, 347-48 (1980); Workman v. Mullin,

---

[12](...continued)
calculate the severity of the offense and take into account aggravating and mitigating factors.

I think they're especially important in a big case like this where you have a lot of people who fulfill different roles. And the sentencing guidelines help us reach a more equitable sentence by evaluating the relative culpability of the individual defendants and also taking into account their relative presence or lack of criminal history. So that's where we start.

I'm also required to consider and impose a sentence which is sufficient but not greater than necessary to meet all of the objectives of federal sentencing law. Those include calculating a sentence which reflects the seriousness of the offense, promoting respect for the law, providing just punishment, and deterring further . . . criminal conduct by both you and others and protecting the public from further crimes by you.

Given the scope of your involvement in these drug trafficking activities and the extreme amount of drugs, especially methamphetamine, which was involved, and the presence of multiple weapons, it's clear to me that your behavior created a significant danger to the community and should be punished accordingly.

Transcript Of Sentencing (Doc. #513) at 65.

342 F.3d 1100, 1107 (10th Cir. 2003). An actual conflict of interest exists only if counsel was "forced to make choices advancing . . . interests to the detriment of his client." Id. (quoting United States v. Alvarez, 137 F.3d 1249, 1251-52 (10th Cir. 1998)). In addition, defendant must identify specific instances in the record that suggest his interests were damaged for the benefit of another party. Workman, 342 F.3d at 1107. Defendant's conclusory allegations of a conflict do not satisfy either prong and are insufficient to warrant an evidentiary hearing.[13] See Hatch, 58 F.3d at 1471; Chandler, 291 F. Supp.2d at 1209.

## VII. Conclusion

The files and records in this case conclusively show that defendant is not entitled to relief. Moreover, defendant does not allege specific and particularized facts which, if true, would entitle him to relief. Accordingly, no evidentiary hearing is required. See 28 U.S.C. § 2255; Kilpatrick, 1997 WL 537866, at *3 (allegations of ineffective assistance must be specific and particularized; conclusory allegations do not warrant hearing); United States v. Marr, 856 F.2d 1471, 1472 (10th Cir. 1988) (no hearing required where factual matters raised by Section 2255 petition may be resolved on record); United States v. Barboa, 777 F.2d 1420, 1422-23 (10th Cir. 1985) (hearing not required unless "petitioner's allegations, if proved, would entitle him to relief" and allegations are not contravened by record).

## VIII. Certificate Of Appealability

Effective December 1, 2009, under Rule 11 of the Rules Governing Section 2255 Proceedings, the Court must issue or deny a certificate of appealability when it enters a final order

---

[13] To the extent defendant asserts that the conflict was between himself and Simon, he has not specifically explained how any alleged disagreement resulted in counsel's deficient or prejudicial performance.

adverse to the applicant. A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).[14] To satisfy this standard, the movant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Saiz v. Ortiz, 392 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting Tennard v. Dretke, 542 U.S. 274, 282 (2004)). For reasons stated above, the Court finds that defendant has not made a substantial showing of the denial of a constitutional right. The Court therefore denies a certificate of appealability as to its ruling on defendant's Section 2255 motion.

**IT IS THEREFORE ORDERED** that defendant's Motion To Vacate Sentence Pursuant To 28 U.S.C. § 2255 (Doc. #626) filed January 4, 2010 be and hereby is **OVERRULED**. The Court denies a certificate of appealability as to its ruling on defendant's Section 2255 motion.

Dated this 13th day of October, 2010, at Kansas City, Kansas.

> s/ Kathryn H. Vratil
> KATHRYN H. VRATIL
> United States District Judge

---

[14] The denial of a Section 2255 motion is not appealable unless a circuit justice or a circuit or district judge issues a certificate of appealability. See Fed. R. App. P. 22(b)(1); 28 U.S.C. § 2253(c)(1).