## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CRIMINAL ACTION** |
| **v.** | ) | |
| | ) | **No. 06-20021-01-KHV** |
| **HECTOR MOREIRA,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

On October 5, 2007, the Court sentenced defendant to life in prison.   On September 24,

2020, defendant filed a Motion To Reduce Sentence - First Step Act (Doc. #767), which seeks

compassionate release under 18 U.S.C. § 3582.   On November 2, 2020, pursuant to District of

Kansas Standing Order No. 20-8, the Office of the Federal Public Defender notified the Court that

it does not intend to enter an appearance to represent defendant.   For reasons stated below, the

Court dismisses defendant's motion.

### Factual Background

On March 20, 2007, defendant pled guilty to conspiracy to possess with intent to distribute

50 grams or more of methamphetamine, 500 grams or more of cocaine, and a detectable amount

of marijuana, possession with intent to distribute and distribution of 50 grams or more of

methamphetamine, distribution of five grams or more of methamphetamine, possession with intent

to distribute 500 grams or more of cocaine and possession with intent to distribute marijuana, in

violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii), (b)(1)(A)(viii), (b)(1)(D), 846 and 18 U.S.C. § 2.

See Petition To Enter Plea Of Guilty An Order Entering Plea (Doc. #322).   Because defendant

pled guilty to an offense under 21 U.S.C. § 841(b)(1)(A), he faced a statutory range of 10 years to

life in prison.   See 21 U.S.C. § 841(b)(1)(A)(viii).   The Court attributed 4.89 kilograms of actual methamphetamine to defendant for a base offense level of 38 under the United States Sentencing Guidelines ("U.S.S.G.") § 2D1.1(c)(1).   See Presentence Investigation Report ("PSR"), ¶ 91. The Court applied a two-level enhancement because defendant possessed a firearm, a four-level enhancement because defendant was an organizer or leader of criminal activity that involved five or more participants and a two-level enhancement for obstruction of justice because defendant recklessly created a substantial risk of death or serious bodily injury to another person while fleeing from law enforcement.   Id., ¶¶ 92, 94, 95.   Despite the Court's application of an enhancement for obstruction of justice, it granted defendant a two-level reduction for acceptance of responsibility. Id., ¶ 97.   The total calculated offense level was 44, but the Sentencing Guidelines do not include ranges for offense levels above 43.   Id., ¶ 101.   Based on a total offense level of 44 and a criminal history category I, defendant's guideline range was life in prison.   Id., ¶ 123.   On October 5, 2007, the Court sentenced defendant to life in prison.   Defendant appealed, and the Tenth Circuit affirmed.   See Mandate (Doc. #589).   On March 17, 2009, the United States Supreme Court denied a writ of certiorari.   See Letter (Doc. #605).

Defendant filed post-conviction motions challenging his conviction and sentence, but the Court denied relief.   See Memorandum And Order (Doc. #668) filed October 13, 2010 (overruling defendant's motion to vacate under Section 2255); Memorandum And Order (Doc. #754) filed August 1, 2016 (overruling defendant's motion to reduce sentence).   The Tenth Circuit denied defendant's motion to file a second or successive motion under Section 2255, dismissed his appeal of the Court's ruling on his Section 2255 motion, and affirmed the Court's dismissal of his motion to reduce sentence.   See Order (Doc. #753) filed July 21, 2016 (denying defendant's motion to

file second or successive motion under Section 2255), <u>Order</u> (Doc. #727) filed February 3, 2014 (same), <u>Order</u> (Doc. #684) filed March 24, 2011 (denying motion for certificate of appealability of ruling on Section 2255 motion), <u>Mandate</u> (Doc. #762) filed March 2, 2017 (affirming district court decision dismissing defendant's motion to reduce sentence).

Defendant currently is confined at USP Terre Haute, a Bureau of Prisons ("BOP") facility in Terre Haute, Indiana.  USP Terre Haute houses 1,269 inmates.  <u>See</u> <u>USP Terre Haute</u>, https://www.bop.gov/locations/institutions/thp (last visited Nov. 23, 2020).   As of November 23, 2020, 97 inmates and five staff members at USP Terre Haute had tested positive for COVID-19. <u>See</u> <u>COVID-19 Cases</u>, https://www.bop.gov/coronavirus (last visited Nov. 23, 2020).   Two of the inmates who contracted COVID-19 have died.  <u>See</u> <u>id.</u>  Overall, 91 inmates and five staff members who had tested positive have recovered.  <u>See</u> <u>id.</u>

Defendant is 40 years old.  He asks the Court to grant compassionate release because (1) as a first-time offender, his life sentence is higher than necessary, (2) he has successfully participated in BOP rehabilitation programs, (3) at USP Terre Haute, he is at risk of contracting COVID-19 because of hypertension and (4) he needs to care for his father, who lives in Guatemala and has been diagnosed with colon cancer.

## Analysis

A federal district court may modify a defendant's sentence only where Congress has expressly authorized it to do so.   <u>See</u> 18 U.S.C. § 3582(b)–(c); <u>United States v. Blackwell</u>, 81 F.3d 945, 947 (10th Cir. 1996).  Congress has set forth only three limited circumstances in which a court may modify a sentence: (1) upon motion of the BOP Director or defendant under Section 3582(c)(1)(A); (2) when "expressly permitted by statute or by Rule 35" of the Federal

Rules of Criminal Procedure; and (3) when defendant has been sentenced "based on a sentencing range that has subsequently been lowered by the Sentencing Commission."  18 U.S.C. § 3582(c).

Under the First Step Act of 2018, Pub. L. No. 115-391 (S. 756), 132 Stat. 5194, the Court may order compassionate release for "extraordinary and compelling reasons."  18 U.S.C. § 3582(c)(1)(A)(i).  The Court may entertain requests for compassionate release only upon a motion of the BOP, however, or of defendant after defendant "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).

The Court may entertain requests for compassionate release only upon a motion of the BOP or defendant after he submits a request to BOP and the earlier of (1) when he "fully exhaust[s] all administrative rights to appeal" or (2) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A).  As to the second alternative, a "lapse" refers to the failure of the warden to respond to defendant's request.  See United States v. Abdeljawad, No. 15-CR-3394 WJ, 2020 WL 4016051, at *2 (D.N.M. July 16, 2020) (in context, "lapse of 30 days" refers to complete absence of response during that period); United States v. Saenz, No. 97CR2106-JLS, 2020 WL 2767558, at *2 (S.D. Cal. May 28, 2020) (no "lapse" because warden acted on defendant's request); United States v. Miller, 2020 WL 113349, at *2 (D. Idaho Jan. 8, 2020) ("lapse" means warden must fail to act on request for 30 days); see also lapse, Black's Law Dictionary 958 (9th ed. 2009) (lapse is "termination of a right or privilege because of a failure to exercise it within some time limit or because a contingency has occurred or not occurred").  In other words, if the warden responds to a request within 30 days, defendant

must fully exhaust available administrative appeals before filing a motion in district court.   See United States v. Valenzuela, No. 15-CR-01460-WJ, 2020 WL 5439803, at *2 (D.N.M. Sept. 10, 2020) (court lacks jurisdiction until inmate appeals warden denial through administrative appeal process and receives final agency determination); United States v. Van Sickle, No CR18-0250JLR, 2020 WL 3962225, at *3 (W.D. Wash. July 13, 2020) (despite urgency created by COVID-19, defendant must exhaust administrative remedies within BOP before filing motion in court.   But see United States v. Harris, 812 F. App'x 106, 107 (3d Cir. 2020) (statute allows defendant to file motion 30 days "after the warden receives his request"); United States v. Alam, 960 F.3d 831, 834 (6th Cir. 2020) ("Prisoners who seek compassionate release have the option to take their claim to federal court within 30 days, no matter the appeals available to them.").

The administrative exhaustion requirement in Section 3582(c)(1) is jurisdictional.   United States v. Scott, No. 16-10003-02-EFM, 2020 WL 5513616, at *1 (D. Kan. Sept. 14, 2020); see United States v. Read-Forbes, 454 F. Supp. 3d 1113, 1116 (D. Kan. 2020) (analyzing "text, context, and relevant historical treatment" of Section 3582(c)) (quoting Musacchio v. United States, 136 S. Ct. 709, 717 (2016)).   Defendant alleges that he has satisfied the exhaustion prerequisite because the warden denied his written request for compassionate release.   Motion To Reduce Sentence – First Step Act (Doc. #767), at 4–5.   The record reflects that defendant submitted a request on July 3, 2020, which the warden denied on July 13, 2020.   Id. at Ex. A.   In his response, the warden advised defendant that he had the right to file an administrative appeal, but he did not do so.   Rather than appealing the warden's decision, on September 24, 2020, defendant filed a motion for compassionate release.   Because defendant did not appeal the warden's denial of his request, he has not fully exhausted all administrative appeal rights.

Accordingly, the Court lacks jurisdiction to consider his motion for compassionate release.

Even if the Court construed the administrative exhaustion requirement of Section 3582(c)(1)(A) as a claims-processing rule rather than a jurisdictional limitation, the statutory rule would still bar defendant's motion at this time.   See Read-Forbes, 454 F. Supp. 3d, at 1117.   In contrast with judicially created exhaustion requirements, the Court lacks discretion to excuse defendant's failure to comply with a mandatory statutory requirement to exhaust administrative remedies.   Malouf v. SEC, 933 F.3d 1248, 1256 (10th Cir. 2019), cert. denied, 2020 WL 1124531 (U.S. Mar. 9, 2020); see Ross v. Blake, 136 S. Ct. 1850, 1856–57 (2016) (exhaustion statutes like Prison Litigation Reform Act of 1995 establish mandatory exhaustion regimes, foreclosing judicial discretion).   The COVID-19 pandemic is no exception.   See Alam, 960 F.3d at 831, 833–36 (enforcing mandatory exhaustion requirement despite seriousness of COVID-19 and its spread in prisons); United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) (despite COVID-19 pandemic, failure to exhaust presents "glaring roadblock" foreclosing compassionate release at this point).

Whether the exhaustion requirement is jurisdictional or a claims-processing rule, sound policy reasons support the requirement that defendant must first present to the BOP his request for a reduced sentence.   The exhaustion requirement helps prevent premature claims and ensures that the agency that possesses the most expertise is given the first shot at resolving defendant's request. See Forest Guardians v. U.S. Forest Serv., 641 F.3d 423, 431 (10th Cir. 2011); See also Raia, 954 F.3d at 597 ("Given BOP's shared desire for a safe and healthy prison environment, . . . strict compliance with § 3592(c)(1)(A)'s exhaustion requirement takes on added—and critical— importance.").   Because defendant is in BOP custody, the BOP is in a better position to initially

determine his medical needs, his specific risk of COVID-19 and the risk to inmates generally at USP Terre Haute, the risk to the public if he is released and whether his release plan is adequate. See United States v. Epstein, No CR 14-287-FLW, 2020 WL 1808616, at *4 (D.N.J. Apr. 9, 2020); see also Alam, 960 F.3d at 835 (preventing prisoners seeking relief because of COVID-19 from charging straight to federal court helps prison administrators prioritize most urgent claims and ensure that they can investigate gravity of conditions supporting compassionate release and likelihood that conditions will persist); United States v. Dickinson, No. 19-CR-251-17, 2020 WL 1904058, at *3 (N.D. Ohio Apr. 17, 2020) (BOP better positioned to understand inmate health and circumstances relative to entire prison population and identify extraordinary and compelling reasons for release).   Likewise, the BOP is in a better position to coordinate any request for relief under Section 3582(c)(1)(A) with the exercise of its discretion to place a prisoner in home confinement under 18 U.S.C. 3624(c)(2).

Even if defendant had exhausted administrative remedies, he has not shown "extraordinary and compelling reasons" for release.   Under the compassionate release statute, after considering the applicable factors set forth in Section 3553(a), the Court may grant relief if defendant establishes that (1) "extraordinary and compelling reasons" warrant a reduced sentence and (2) a reduced sentence is "consistent with applicable policy statements issued by the Sentencing Commission."   18 U.S.C. § 3582(c)(1)(A).   Congress specifically authorized the Sentencing Commission to issue policy statements defining "what should be considered extraordinary and compelling reasons for [a] sentence reduction, including the criteria to be applied."   United States v. Saldana, 807 F. App'x 816, 819 (10th Cir. 2020) (quoting 28 U.S.C. § 994(t)).

The Sentencing Commission has identified four reasons that may constitute grounds for

compassionate release: (1) defendant's medical condition; (2) defendant's age; (3) defendant's family circumstances; and (4) as determined by the Director of the BOP, an "extraordinary and compelling reason other than, or in combination with," the first three categories.   U.S.S.G. § 1B1.13, <u>Reduction In Term Of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)</u>, cmt. n.1.[1]   In addition, the policy statement requires that before granting relief, the

---

[1]   Application Note 1 provides as follows:

1. <u>Extraordinary and Compelling Reasons</u>.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A)   <u>Medical Condition of the Defendant</u>.—
(i)   The defendant is suffering from a terminal illness (<u>i.e.</u>, a serious and advanced illness with an end of life trajectory).   A specific prognosis of life expectancy (<u>i.e.</u>, a probability of death within a specific time period) is not required.   Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii)   The defendant is—
(I)   suffering from a serious physical or medical condition,
(II)   suffering from a serious functional or cognitive impairment, or
(III)   experiencing deteriorating physical or mental health because of the aging process,
that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B)   <u>Age of the Defendant</u>.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C)   <u>Family Circumstances</u>.
(i)   The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(continued. . .)

Court must find that defendant "is not a danger to the safety of any other person or to the community."  U.S.S.G. § 1B1.13(2) (citing 18 U.S.C. § 3142(g)).  In December of 2018, the First Step Act amended Section 3582(c)(1)(A) to permit defendants (rather than only the BOP) to file motions for compassionate release.   The Sentencing Commission's policy statement, which was effective November 1, 2018, nonetheless remains the relevant policy statement in determining whether "extraordinary and compelling reasons" warrant defendant's release.   See Saldana, 807 F. App'x at 819 (applying policy statement effective November 1, 2018 to defense motion under Section 3582(c)(1)(A)).   Unless the grounds for resentencing fall within one of the specific categories that Congress has authorized under Section 3582(c), the Court lacks jurisdiction to consider defendant's request.   See id.; United States v. Brown, 556 F.3d 1108, 1113 (10th Cir. 2009).

Here, defendant seeks compassionate release based on his life sentence, rehabilitation efforts, the risk that he will contract COVID-19 at USP Terre Haute and his father's diagnosis of colon cancer.   The government concedes that a medical condition that elevates an inmate's risk of becoming seriously ill if he contracts COVID-19 may constitute an extraordinary and

---

[1] (. . .continued)

        (ii)   The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

        (D)   Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13, cmt. n.1.

compelling reason for release.   See Response In Opposition (Doc. #769) at 12–13.   The

government argues that medical conditions such as hypertension during the COVID-19 pandemic

satisfy the criteria under subsection (A) of the Section 1B1.13 commentary, i.e. a chronic condition

that "substantially diminishes the ability of the defendant to provide self-care within the

environment of a correctional facility and from which he or she is not expected to recover."

Response In Opposition (Doc. #769) at 13.   However, subsection (A) does not apply because

unless and until defendant contracts COVID-19, his hypertension does not limit his ability to

provide self-care within the prison environment.   See U.S.S.G. § 1B1.13, cmt. n.1(A).

Subsection (B) does not apply because defendant is 40 years old.   See U.S.S.G. § 1B1.13,

cmt. n.1(B) (defendant must be at least 65 years old to qualify for relief based on age).

Subsection (C) does not apply because defendant seeks relief based on the circumstances of his

parent, not his spouse or caregiver of his minor child.   See U.S.S.G. § 1B1.13, cmt. n.1(C) (relief

based on death or incapacitation of caregiver of minor child or incapacitation of spouse where

defendant would be only available caregiver).   Accordingly, for defendant to establish

extraordinary and compelling reasons for release, he must rely on the catchall provision of

subsection (D).

   Under subsection (D) of the Section 1B1.13 commentary, as determined by the Director of

the BOP, release may be appropriate based on other "extraordinary and compelling reason[s]," by

themselves or in combination with defendant's medical condition, age and family circumstances.

U.S.S.G. § 1B1.13, cmt. n.1(D).   To determine whether defendant presents other extraordinary

and compelling reasons for release, the BOP has identified several "nonexclusive factors" to

consider: defendant's criminal and personal history, the nature of his offense, disciplinary

infractions, length of sentence and amount of time served, current age and age at the time of offense and sentencing, release plans and whether release would "minimize the severity of the offense." Saldana, 807 F. App'x at 819 (quoting BOP Program Statement 5050.50 at 12 (2019)).   Where the BOP Program statement is a "permissible construction of the statute," it is entitled to "some deference."   Id. (quoting Reno v. Koray, 515 U.S. 50, 61 (1995)).

As explained above, the First Step Act permits defendants (rather than only the BOP) to file motions for compassionate release.   The Sentencing Commission, however, which has lacked a quorum since the First Step Act was enacted in December of 2018, has not amended the Section 1B1.13 commentary which includes the catchall provision for other extraordinary and compelling reasons "[a]s determined by the Director of the BOP."   U.S.S.G. § 1B1.13, cmt. n.1(D).   In an unpublished decision, the Tenth Circuit implicitly recognized that in addition to the BOP, courts now can make such a determination.   See Saldana, 807 F. App'x at 819–20.[2] The Court likewise concludes that on a defense motion, it may—independently of the BOP— determine whether defendant has established "other" extraordinary and compelling reasons that warrant a reduced sentence beyond those stated in subsections (A) to (C) of the Section 1B1.13 commentary.   U.S.S.G. § 1B1.13, cmt. n.1(D); see United States v. Israel, No. 95-00314-CR, 2020 WL 4362258, at *4 n.3 (S.D. Fla. July 29, 2020) (overwhelming majority of courts conclude

---

[2]         In Saldana, defendant argued that in determining whether he had established other compelling reasons under the catchall provision of subsection (D), the district court should have considered (1) his post-conviction rehabilitation efforts and (2) post-sentencing case law that would have lowered his sentencing range.   See id.   In affirming the district court's decision to deny defendant's request for a reduced sentence under the catchall provision of subsection (D), the Tenth Circuit implicitly assumed that the district court, rather than the BOP exclusively (as the commentary suggests), can determine whether a defendant has established "other" extraordinary and compelling reasons under the catchall provision.   See id.

that after First Step Act, courts may independently determine whether "other" extraordinary and compelling reasons warrant release); see also 28 U.S.C. § 994(t) (Sentencing Commission shall describe what should be considered extraordinary and compelling reasons including criteria to apply and list of specific "examples"); cf. United States v. Brooker, 976 F.3d 228, 236 (2d Cir. 2020) (because Section 1B1.13 not "applicable" to compassionate release motions brought by defendants, Application Note 1(D) cannot constrain district court discretion to consider whether any reasons extraordinary and compelling).

In the context of compassionate release, "extraordinary" means "exceptional to a very marked extent." United States v. Baydoun, No. 16-20057, 2020 WL 4282189, at *2 (E.D. Mich. July 27, 2020) (quoting extraordinary, Webster's Third International Dictionary, Unabridged (2020)). "Compelling" means "tending to convince . . . by forcefulness of evidence." Id. (quoting compelling, Webster's Third International Dictionary, Unabridged (2020)). As noted above, BOP Program Statement 5050.50 identifies several "nonexclusive" factors for the Court to consider in determining whether "other" extraordinary and compelling reasons warrant a reduced sentence. See Saldana, 807 F. App'x at 819.

Here, defendant first argues that as a first-time offender his sentence is unjustly high. After a defendant has exhausted his direct appeal in a criminal action, his exclusive remedy for raising a challenge to the validity of his sentence is under Section 2255 unless that remedy is inadequate or ineffective. See United States v. McIntyre, 313 F. App'x 160, 162 (10th Cir. 2009); Bradshaw v. Story, 86 F.3d 164, 166 (10th Cir. 1996). Failure to obtain relief under Section 2255 does not establish that the remedy so provided is either inadequate or ineffective. Id. (quoting Williams v. United States, 323 F.2d 672, 673 (10th Cir. 1963). Nothing in the First Step Act

suggests that Congress authorized courts to grant relief under the compassionate release provision of Section 3582(c)(1)(A) based on a request that the Court reconsider whether the sentence is too long.  See United States v. Bell, 823 F. App'x 283, 284 (5th Cir. 2020) (claims that consecutive sentence unduly long and guilty plea not knowing and voluntary inconsistent with policy statement defining extraordinary and compelling reasons for release); United States v. Warren, No. 13-20081-JAR, 2020 WL 5253719, at *4 (D. Kan. Sept. 3, 2020) (§ 2255 motion, not compassionate release motion under § 3582 motion, appropriate avenue to address prosecutorial misconduct based on recording of defendant's conversations with counsel).   Because defendant pled guilty to conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) and 846, a statutory range of 10 years to life applied.   21 U.S.C. § 841(b)(1)(A)(viii); see Petition To Enter Plea Of Guilty And Order Entering Plea, ¶ 10.

Next, defendant argues that he has successfully participated in BOP rehabilitation programs and has obtained skills as a plumber.  Defendant's rehabilitation efforts appear to support a request for release, but he must show extraordinary and compelling reasons beyond rehabilitation to establish that compassionate release is warranted.   See 28 U.S.C. § 994(t) (rehabilitation alone not extraordinary and compelling reason for release under § 3582(c)(1)(A)).

Defendant also argues that he needs to care for his father who is terminally ill in Guatemala. Defendant, however, provides no documentation to support this allegation or the allegation that he is the only person who can care for his father.   Based on this limited information, defendant has not shown that his father's failing health is an extraordinary and compelling reason for relief.

Finally, defendant argues that because of the conditions at USP Terre Haute and his

diagnosis of hypertension, he is at risk of contracting COVID-19.   The government does not

dispute the defendant's hypertension diagnosis and that hypertension may elevate defendant's risk

of contracting COVID-19 or suffering severe illness should he contract it.   See Response In

Opposition (Doc. # 769) at 12–14.   At age 40, defendant is relatively young.   The PSR notes that

in 2007, defendant reported no known diseases, disabilities or history of mental or emotional

problems.   PSR, ¶¶ 112, 113.   Defendant has not shown that compared to placement in ICE

custody and eventually in Guatemala, he faces a heightened or imminent risk of exposure to

COVID-19 at USP Terre Haute.   See United States v. Wright, No. CR-TDC-17-0388, 2020 WL

2571198, at *3 (D. Md. May 21, 2020) (inmate must show imminent risk of exposure to COVID-19

and high risk for death or serious illness should he or she contract COVID-19 based on age,

medical conditions or other factors).

Defendant has not shown that the above factors, either individually or collectively,

establish extraordinary and compelling reasons for release.   Likewise, defendant has not

established that any of the nonexclusive factors in BOP Program Statement 5050.50 compel his

release.   COVID-19 certainly presents a challenge in the prison setting, where inmates generally

live in close quarters.   Even so, the risk that COVID-19 may re-emerge at USP Terre Haute cannot

"justify compassionate release, especially considering BOP's statutory role, and its extensive and

professional efforts to curtail the virus's spread."   Raia, 954 F.3d at 597.

Even if defendant's life sentence, his rehabilitation efforts, his father's failing health, the

conditions at USP Terre Haute and the COVID-19 pandemic were considered "extraordinary and

compelling" reasons for release, the Court would deny relief after considering the various factors

under 18 U.S.C. § 3553.   A sentence of time served, or approximately 13 years, is inconsistent

with the seriousness of defendant's offense, the need for deterrence and the need to protect the public.  Specifically, defendant committed a significant drug trafficking offense.  As part of the offense conduct, defendant was responsible for 4.89 kilograms of actual methamphetamine.  <u>See</u> <u>PSR</u>, ¶ 91.  He also possessed a firearm and was a manager or supervisor in the criminal activity that involved at least five participants.  <u>Id.</u>, ¶¶ 92, 94.  Defendant obstructed justice by recklessly creating a substantial risk of death or serious bodily injury to another person while fleeing from a law enforcement officer.  <u>Id.</u>, ¶ 95.  Defendant's calculated offense level was 44, which is greater than the maximum of 43 under the Sentencing Guidelines.  <u>Id.</u>, ¶ 101.

The Court recognizes that defendant has participated in several BOP programs, including training as a plumber.  He apparently has made progress toward rehabilitation.  Even so, on balance, the factors under Section 3553(a) do not support a reduced sentence.

In sum, defendant's life sentence, his rehabilitation efforts, his father's condition, the conditions at USP Terre Haute and the ongoing COVID-19 pandemic are not "extraordinary and compelling" reasons that warrant his release under Section 3582(c)(1)(A).  Therefore, the Court dismisses defendant's motion for release for lack of jurisdiction.  <u>See</u> <u>Saldana</u>, 807 F. App'x at 818, 820–21 (because district court found that defendant had not established "extraordinary and compelling reasons" for reduced sentence, it should have dismissed motion for lack of jurisdiction).

**IT IS THEREFORE ORDERED** that defendant's <u>Motion To Reduce Sentence – First Step Act</u> (Doc. #767) filed September 24, 2020 is **DISMISSED**.

Dated this 25th day of November, 2020 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge